## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| SHARON GRAAF | : |
| 98 Winter Harvest Drive | : CIVIL ACTION NO.:_____ |
| Bear Creek Township, PA 18702 | : |
| | : **JURY TRIAL DEMANDED** |
| *Plaintiff,* | : |
| v. | : |
| | : |
| SCRANTON COUNSELING CENTER | : |
| 329 Cherry Street | : |
| Scranton, PA 18505 | : |
| | : |
| *Defendant.* | : |

---

## COMPLAINT – CIVIL ACTION

Plaintiff Sharon Graaf ("Plaintiff"), hereby brings this action against Defendant Scranton Counseling Center ("Defendant") and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this Complaint contending that Defendant has improperly failed to pay her overtime compensation pursuant to the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.100 *et seq.* Plaintiff further contends that Defendant failed to pay her wages, in the form of accrued PTO benefits, upon her separation from employment in violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*

2.      Plaintiff brings this action for monetary damages, declaratory and injunctive relief, and other equitable and ancillary relief, to seek redress for Defendant's willful, unlawful and improper conduct.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."  See 29 U.S.C. § 216(b).

4.      This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as her federal law claims.

6.      The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as Defendant's place of business is located in this district, and the unlawful practices of which Plaintiff is complaining were committed in this district.

## PARTIES

7.      Paragraphs 1 through 6 are hereby incorporated by reference as though the same were fully set forth at length herein.

8.      Plaintiff Sharon Graaf is a citizen of the United States with a current address of 98 Winter Harvest Drive, Bear Creek Township, PA 18702.

9.     Upon information and belief, Defendant Scranton Counseling Center is a non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a place of business and office address registered with the Pennsylvania Secretary of State at 329 Cherry Street, Scranton, PA 18505.

10.     Defendant is a private employer and covered by the FLSA.

11.     Plaintiff is an employee engaged in commerce within the meaning of the FLSA in that, during the course of her employment, she performed work involving goods purchased and/or ordered from locations outside of Pennsylvania.

12.     Upon information and belief, Defendant is a covered employer under the FLSA in that, during the past three (3) years, it had an annual dollar volume of sales or business done of at least $500,000, and had employees engaged in commerce within the meaning of the FLSA.

13.     Upon information and belief, Defendant provides mental health services in competition with ordinary commercial enterprises, such as for-profit health care and counseling providers, and receives in excess of $500,000 in revenue annually for said commercial activities.

14.     Plaintiff is an employee who was employed by Defendant during all times relevant hereto and, as such, is entitled to the FLSA's protections.  See 29 U.S.C. § 203(e).

15.    At all times relevant hereto, Defendant acted or failed to act through its agents, servants and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

16.    Paragraphs 1 through 15 are hereby incorporated by reference as though the same were fully set forth at length herein.

17.    Plaintiff began her employment with Defendant on or around June 9, 2016, when she was hired into the position of Nurse Practitioner in Defendant's Child Outpatient Department.

### Factual Allegations Related to Plaintiff's Claims for
### Unpaid Overtime Compensation

18.    Paragraphs 1 through 17 are hereby incorporated by reference as though the same were fully set forth at length herein.

19.    When Plaintiff was hired, Defendant's Director of Human Resources, Hope Kleinbauer ("Ms. Kleinbauer"), advised her in writing that her position would be "part-time," twenty-four (24) hours per week, with "limited benefits," and that she would be paid "a rate of $40.00 per hour."  See Letter from Hope Kleinbauer dated June 9, 2016, a true and correct copy of which has been attached hereto as Exhibit "A."

4

20.     When Plaintiff asked whether she would be receiving a contract with Defendant, Defendant's CEO, Edward Heffron ("Mr. Heffron"), responded, "I'm not giving you a contract. You're hourly."

21.     Due to Plaintiff's excellent work performance, in or around February 2017, Defendant switched her from part-time to full-time, with full benefits.

22.     Despite her switch to full-time, Defendant did not present Plaintiff with a new offer letter or any documentation describing changes to her compensation, such as whether she was being switched from hourly to salary pay.

23.     In fact, even after she became a full-time employee, Plaintiff continued to be treated as if she were an hourly employee, except on those occasions – rare before early 2020 –when she worked more than forty (40) hours in a workweek.

24.     In this regard, Plaintiff was required to track her work hours and was required to utilize her PTO to cover absences lasting less than a full working day, where such partial-day absences caused her hours worked to fall below forty (40) in a workweek.

25.     For example, during the pay period of December 7, 2020 to December 20, 2020, Defendant docked two (2) hours from Plaintiff's regular pay due to a partial day absence, forcing her to use sick time to cover the same.

26.     Defendant also docked three (3) hours from Plaintiff's regular pay due to a partial day absence during the pay period of March 15, 2021 to March 28, 2021, again forcing her to use her sick time to cover the same.

27.     Nevertheless, if Plaintiff did work more than forty (40) hours in a workweek – which, as detailed below, occurred with regularity starting in early 2020 – she did not receive any overtime compensation.

28.     Pursuant to Defendant's policies and practices, Plaintiff, and upon information and belief, all other "salaried" employees of Defendant, are/were subject to deductions from their PTO and/or pay for any absences lasting less than a full working day.

29.     Upon information and belief, in the event that Plaintiff or other supposedly salaried employees do not/did not have sufficient PTO time to cover the time deducted, it is Defendant's policy and practice to deduct that time from their pay.

30.     The pay deduction policy utilized by Defendant constitutes a "clear and particularized policy" which effectively communicates that deductions will be made in specific circumstances disallowed under the FLSA and PMWA, including for absences lasting less than one full day.

31.     An employer is not entitled to claim any exemption under the FLSA or PMWA requiring the payment of compensation on a salary basis if said employer has an "actual practice" of making improper deductions from salary.

32.     In addition to maintaining the "clear and particularized policy" of unlawful deductions described above, Defendant did in fact make such deductions from Plaintiff's pay.

33.     As a result of Defendant's actual practice of making unlawful pay deductions under the FLSA and PMWA, Plaintiff was not compensated on a bona fide salary basis.

34.     Rather, Plaintiff was treated as a salaried employee only when doing so favored Defendant (i.e. when working full shifts without partial day absences) and was otherwise effectively treated as an hourly employee.

35.     During the second week of March 2020, Dr. Cyril Puhalla ("Dr. Puhalla"), one (1) of the two (2) doctors in Defendant's Child Department, retired.

36.     As a result, Dr. Puhalla's caseload was reassigned to Plaintiff, on top of her own patients.

37.     Around the same time, as the COVID-19 pandemic began, Plaintiff began working remotely from home.

38.     Largely as a result of Plaintiff's increased caseload, Plaintiff began working approximately fifty (50) hours per week, including non-direct service time

spent, *inter alia*, on work-related phone calls and text messages, conducting new psychiatric evaluations, performing research, and reviewing medical and medication histories of Dr. Puhalla's patients.

39.     For example, during the workweek of April 26, 2020 to May 2, 2020, Plaintiff worked approximately fifty (50) hours, but did not receive any additional compensation, let alone overtime compensation, for the approximately ten (10) hours of overtime she worked that week.

40.     In or around May 2020, Plaintiff contacted Mr. Heffron about her increased workload, asking, "How am I going to be compensated?"

41.     Mr. Heffron responded, "If you don't see [Dr.] Puhalla's patients, you will never see a raise." Mr. Heffron also told Plaintiff she was "acting like a prima donna who doesn't need to take any extra patients."

42.     Nevertheless, after Mr. Heffron's departure as CEO on April 1, 2021, Defendant's interim CEO, Sal Santoli ("Mr. Santoli"), agreed to give Plaintiff a raise in order to "keep her on board."

43.     Specifically, Mr. Santoli told Plaintiff, "I'm going to give you a $7 [per hour] raise."

44.     Mr. Santoli then brought Jeff Novak ("Mr. Novak"), Chief Financial Officer, into the meeting and told him about the increase to Plaintiff's hourly rate.

45.     As a result, Plaintiff's hourly rate was increased for $50.84 to $57.70.

46.     Based on the aforementioned, Plaintiff was paid on an hourly basis.

47.     Moreover, to the extent Defendant contends that Plaintiff was paid on a salary basis, due to its actual practice of making unlawful deductions under the FLSA/PMWA, Plaintiff was not compensated on a bona fide salary basis, nor was she compensated on a fee basis within the meaning of the FLSA/PMWA.

48.     Accordingly, Plaintiff does not qualify for the exemptions for executive, administrative, or professional employees under the FLSA/PMWA.

49.     Moreover, there are no other exemptions under the FLSA and/or PMWA which could arguably be applicable to Plaintiff.

50.     Plaintiff was, within the meaning of the FLSA and PMWA, a non-exempt employee of Defendant and therefore entitled to overtime compensation for all hours she worked over forty (40) in a workweek.

51.     As a result of Defendant's aforesaid illegal actions, Plaintiff has suffered damages.

### Factual Allegations Related to Plaintiff's Claims for Unpaid PTO Benefits

52.     Paragraphs 1 through 51 are hereby incorporated by reference as though the same were fully set forth at length herein.

53.     With her switch to full-time, Plaintiff became eligible to accrue paid time off in the form of annual leave and sick time benefits.

54.     Specifically, pursuant to Defendant's written Annual Leave policy ("Annual Leave Policy'), as a full-time employee, Plaintiff was eligible to accrue ten (10) days of annual leave during her first two (2) years, thirteen (13) days of annual leave during her third and fourth year, and seventeen (17) days of annual leave through years five (5) through ten (10), at the hourly accrual rates of 0.0385, 0.0500, and 0.0654, respectively.  See SCC's Annual Leave Policy and Sick Leave Policy, a true and correct copy of which has been attached hereto as Exhibit "B."

55.     Under the written Annual Leave Policy, Plaintiff was permitted to accrue a maximum of twenty (20) days of annual leave to be carried over to the next calendar year.

56.     Upon information and belief, Defendant also had an unwritten policy and practice of allowing employees, including Plaintiff, to accrue and carry over a maximum of thirty (30) days, or two hundred and forty (240) hours of annual leave.

57.     Indeed, in or around June 2017, Ms. Kleinbauer confirmed to Plaintiff that she was entitled to accrue up to two hundred and forty (240) hours of annual leave/vacation time.

58.     Furthermore, under the written Annual Leave Policy, upon termination of employment, employees such as Plaintiff were entitled to "receive

compensation for all annual leave earned up to the maximum of 20 days," except if

terminated for "just cause."

59.     Upon information and belief, Defendant also had an unwritten policy

and practice of paying its employees upon termination for all accrued annual leave,

up to the unwritten maximum of thirty (30) days.

60.     Similarly, pursuant to Defendant's written Sick Leave policy ("Sick

Leave Policy"), as a full-time employee, Plaintiff was eligible to accrue six (6)

days of sick leave per year during each of her first two (2) years, and then twelve

(12) days of sick leave per year thereafter, at the hourly accrual rates of 0.231 and

0.0462, respectively.  See Exhibit B.

61.     Under the Sick Leave policy, Plaintiff was permitted to accrue a

maximum of one hundred and twenty (120) sick days.

62.     Furthermore, under the Sick Leave Policy, employees such as Plaintiff

were entitled to reimbursement upon termination for all accrued sick time at 10%

for accrued days 1 through 20.5, 15% for accrued days 21 through 40.5, and 20%

for accrued days 41 and over, except where the employee was terminated for "just

cause."

63.     Plaintiff continued working for Defendant as a Nurse Practitioner

until May 26, 2021, when she was terminated for pretexual reasons not qualifying

as "just cause" within the meaning of Defendant's PTO payout policy, as detailed below.

64.     In this regard, Defendant accused Plaintiff of changing the terms and conditions of a collaborative agreement with Defendant's Medical Director after he had signed off on it.

65.     While Defendant's employee handbook does not define "just cause," Defendant subsequently asserted that Plaintiff's alleged actions had constituted "[f]alsifying employment records," for purposes of Defendant's Code of Conduct.

66.     However, Plaintiff did not falsify any records related to her collaborative agreement, or any other document for that matter, as Defendant is well aware.

67.     In this regard, Plaintiff entered into a collaborative agreement with Prasad R. Joshi ("Dr. Joshi") with an effective date of June 4, 2020, under which Plaintiff was authorized to prescribe the following drug categories: antihistamines, anti-infective agents, cardiovascular drugs, central nervous system drugs, and vitamins.

68.     With Dr. Joshi's departure from the practice on June 18, 2021, on April 22, 2021, Plaintiff attempted to enter into a collaborative agreement with Defendant's Medical Director, Dr. Muhammed Rahman ("Dr. Rahman").

69.     Under this new collaborative agreement, Plaintiff would only be authorized to dispense the following drug categories: antihistamines and central nervous system drugs.

70.     However, on or around May 11, 2021, the Pennsylvania Board of Nursing advised Plaintiff that the April 22, 2021 collaborative agreement was being voided as incomplete, since it was missing an effective start date and also required signatures.

71.     Accordingly, Plaintiff created a new collaborative agreement for Dr. Rahman's review, this time adding back in the drug categories she had previously been authorized to administer under her previous collaborative agreement with Dr. Joshi, as well as gastrointestinal drugs.

72.     On May 13, 2021, Plaintiff and Dr. Rahman discussed Plaintiff's revisions to the collaborative agreement, including, but not limited to the addition of anti-infective agents (i.e. antibiotics), which she noted were for her own use.

73.     Dr. Rahman review and agreed to the revisions and signed the revised collaborative agreement.

74.     At that moment, Defendant's secretary, Lisa Tindale ("Ms. Tindale"), came into Dr. Rahman's office.

75.    Dr. Rahman handed Plaintiff the signed collaborative agreement, which Plaintiff, in turn, handed to Ms. Tindale, whom she asked to scan the agreement and send it to her personal email.

76.    Ms. Tindale ultimately scanned and emailed the document to Plaintiff on May 14, 2021.

77.    Plaintiff never had the opportunity to submit this collaborative agreement to the Board of Nursing because, on or around May 26, 2021, Mr. Santoli met with Plaintiff and told her that Dr. Rahman had claimed that she had forged his signature on the new collaborative agreement.

78.    Shocked, Plaintiff encouraged Mr. Santoli to ask Dr. Rahman to meet with them to confirm his allegations.

79.    However, Dr. Rahman refused to leave his office to confirm or deny his allegation that Plaintiff had "forged" his signature.

80.    Defendant later changed its story, claiming that Plaintiff had not forged Dr. Rahman's signature, but had changed the terms of the collaborative agreement after it had been signed.

81.    This is simply not true; Plaintiff did not alter the terms of the collaborative agreement after Dr. Rahman review and signed it on May 13, 2021.

82.    Plaintiff's actions, as aforesaid, do not constitute a breach of Defendant's Code of Conduct, much less qualify as "just cause" for purposes of

invalidating Defendant's obligations to pay Plaintiff her accrued annual leave and sick leave.

83.    Plaintiff entered into an agreement that she, along with all other full-time employees of Defendant, would be entitled to receive the employee benefits listed above.

84.    Pursuant to Defendant's Employee Handbook, "full-time employees" are those who regularly work more than twenty-five (25) hours per week.

85.    Plaintiff was entitled to receive compensation and/or reimbursement of her accrued PTO benefits, subject to certain caps, unless she was terminated for "just cause."

86.    Plaintiff did not engage in the conduct Defendant contends was "just cause" for her termination.

87.    Plaintiff's termination was not for "just cause" for purposes of Defendant's PTO benefit payout policies.

88.    The aforementioned employee benefits which have been denied to Plaintiff constitute "wages" which are due and owing under the WPCL.

**COUNT I**
**FAIR LABOR STANDARDS ACT**
**29 U.S.C § 201, *et seq.***
<u>**FAILURE TO PAY OVERTIME COMPENSATION**</u>

89.    Paragraphs 1 through 88 are hereby incorporated by reference as though the same were full set forth at length herein.

15

90.     Pursuant to Section 206(b) of the FLSA, employees must be compensated for every hour worked in a workweek.

91.     Moreover, under Section 207(a)(1) of the FLSA, employees must be paid overtime equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week.

92.     Plaintiff was effectively paid on an hourly basis, and, as such, does not qualify for any of the exemptions from overtime compensation which require payment on a salary or fee basis.

93.     At all times relevant hereto, Defendant maintained an actual practice of making unlawful deductions from Plaintiff's pay in violation of the FLSA, thereby precluding a finding that Plaintiff was paid on a bona fide salary basis.  As a result, Defendant was not entitled to claim the executive – and, because she also was not paid on a fee basis – administrative, or professional exemptions from overtime in order to avoid paying overtime to Plaintiff.

94.     As a result, Defendant unlawfully failed to pay Plaintiff overtime compensation for all hours worked over forty (40) in a workweek at 1.5 times her regular rate of pay.

95.     The foregoing actions of Defendant and the policies and practices of Defendant violate the FLSA.

96.     Defendant's actions were willful, not in good faith, and in reckless disregard of clearly applicable FLSA provisions.

97.     Defendant is liable to Plaintiff for actual damages, liquidated damages, and other equitable relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A.     Adjudicating and declaring that Defendant's actions in failing to pay Plaintiff overtime compensation violated the FLSA;

B.     Awarding Plaintiff back overtime wages in an amount consistent with the FLSA;

C.     Awarding Plaintiff liquidated damages in accordance with the FLSA;

D.     Awarding Plaintiff reasonable attorney's fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

E.     Awarding pre- and post-judgment interest and court costs as further allowed by law;

F.     Such other and further relief as is just and equitable under the circumstances.

## COUNT II
## PENNSYLVANIA MINIMUM WAGE ACT OF 1968
### 43 P.S. § 333, *et seq.*
### FAILURE TO PAY OVERTIME COMPENSATION

98.     Paragraphs 1 through 97 are hereby incorporated by reference as though the same were fully set forth at length herein.

99.     The Pennsylvania Minimum Wage Act provides that employers must pay certain "minimum wages," including overtime wages, to their employees.  See 43 P.S. § 333.113.

100.    The Pennsylvania Minimum Wage Act further provides that "employees shall be paid for overtime not less than one and one half times the employee's regular rate" for hours worked in excess of forty (40) hours in a workweek.  See 43 P.S. § 333.113.

101.    By its actions alleged above, Defendant has violated the provisions of the Pennsylvania Minimum Wage Act of 1968 by failing to properly pay overtime compensation.

102.    As a result of Defendant's unlawful acts, Plaintiff has been deprived of overtime compensation in amounts to be determined at trial, and is entitled to recovery of such amounts, together with interest, costs and attorney's fees pursuant to the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.113.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and

against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A.     An award to Plaintiff for the amount of unpaid overtime compensation to which she is entitled, including interest thereon, and penalties subject to proof;

B.     An award to Plaintiff of reasonable attorney's fees and costs pursuant to the Pennsylvania Minimum Wage Act; and

C.     An award to Plaintiff for any other damages available to her under applicable Pennsylvania law, and all such other relief as this Court may deem proper.

## COUNT III
## PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
## 43 P.S. § 260.1, *et seq.*
## <u>FAILURE TO PAY WAGES DUE AND OWING</u>

103.   Paragraphs 1 through 102 are hereby incorporated by reference as though the same were fully set forth at length herein.

104.   Under the WPCL, "[a]ll wages . . . earned in any pay period shall be due and payable within the number of days after the expiration of said pay period as provided in a written contract of employment." <u>See</u> 43 P.S. § 260.3(a).

105.   No provision of the WPCL, including an employee's right to payment of all wages "earned in any pay period" may be "contravened or set aside by a private agreement." <u>See</u> 43 P.S. § 260.7.

106.   Plaintiff entered into an agreement with Defendant as aforesaid for the accrual and payment upon termination of certain PTO benefits.

107.   Defendant was contractually obligated to pay Plaintiff said accrued PTO benefits, subject to certain specified caps, unless Plaintiff was discharged for "just cause."

108.   Plaintiff was not terminated for just cause.

109.   Accordingly, Defendant remains contractually obligated to pay Plaintiff her accrued PTO benefits in the amounts specified in Defendant's PTO policy.

110.   The aforementioned employee benefits are "wages" that were "earned" within the meaning of the WPCL, and are due and owing under the WPCL.

111.   As a result of Defendant's failure to pay Plaintiff these wages due and owing, Plaintiff is entitled to liquidated damages equal to twenty-five percent (25%) of the total amount of wages due.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.     An award to Plaintiff in an amount equal to her unpaid wages;

B.     Liquidated damages of twenty-five percent (25%) under the WPCL;

C.     An award to Plaintiff of reasonable attorneys' fees and costs pursuant to the WPCL;

D.     Pre-judgment interest in an appropriate amount; and

E.     Such other and further relief as is just and equitable under the circumstances.

### JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:  */s/ Michael Groh* _____
Michael Murphy, Esquire
Michael Groh, Esquire
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-021
murphy@phillyemploymentlawyer.com
mgroh@phillyemploymentlawer.com
Attorneys for Plaintiff

Dated: March 31, 2022

## <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.